IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| D.K.S., | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Case No. CIV-24-1179-ALM ) |
| FRANK BISIGNANO,<br>Commissioner of Social Security,[1] | ) ) ) ) |
|     Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

D.K.S.[2] ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner filed the Administrative Record ("AR") (Doc. 6), and the parties have fully briefed the issues. (Docs. 7, 9).[3] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 12). Based on the Court's review of the record and issue presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Frank Bisignano was sworn in as the Commissioner of the Social Security Administration on May 7, 2025, and is therefore substituted as Defendant in this matter, pursuant to Federal Rule of Civil Procedure 25(d).

[2] For privacy purposes in light of the sensitive information disclosed in Social Security cases, the Court refers to Plaintiff by initials only.

[3] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

I.      **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[4] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080,

---

[4] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

**II.     Procedural History**

Plaintiff filed an application for DIB on February 7, 2023, alleging a disability onset date of August 15, 2022. (AR, at 275-77). The SSA denied the application initially and on reconsideration. (*Id*. at 122-26, 136-39). An administrative hearing was held on April 22, 2024. (*Id*. at 33-54). At the hearing Plaintiff amended her alleged onset date to September 29, 2020, one day prior to her date last insured. (*Id*. at 15, 38). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 15-26). The Appeals Council subsequently denied Plaintiff's request for review.

(*Id*. at 1-7). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

### III.    The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date, September 29, 2020, through her date last insured of September 30, 2020. (AR, at 17). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of obesity, right hand impairment, paralyzed vocal cord, major depressive disorder, and generalized anxiety disorder. (*Id*. at 18). At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments. (*Id*. at 19). The ALJ then determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] was able to lift no more than twenty pounds occasionally and ten pounds frequently. She was able to sit, stand or walk six hours in an eight-hour day. The claimant was unable to climb ladders, ropes, or scaffolding. She had no limitation in climbing ramps or stairs. **[Plaintiff] was able to perform detailed and complex tasks. She was able to have occasional contact with the coworkers, supervisors, and the general public.** She could not perform telephone work. [Plaintiff] was able to perform frequent grasping, handling, and fingering with the right, dominate [sic] hand.

(*Id.* at 21) (emphasis added). Then, at Step Four, the ALJ found Plaintiff could not perform any past relevant work. (*Id*. at 24). At Step Five, however, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy, such as inserting machine operator, garment sorter, and linking machine operator. (*Id*. at 25). Thus, the ALJ found that Claimant had not been under a disability at any time from September 29, 2020, the alleged onset date, through September 30, 2020, the date last insured. (*Id*. at 26).

IV. **Claim Presented for Judicial Review**

Plaintiff contends the ALJ erred by failing to support the mental RFC with substantial evidence. (Doc. 7, at 1, 5-15). Specifically, Plaintiff contends that the ALJ failed to properly assess the findings of Dr. Stephen Scott, the state agency psychological consultant. (*Id*. at 6-16).

The Commissioner argues that substantial evidence supports the ALJ's assessment of Plaintiff's mental condition and there was no error in the evaluation of Dr. Scott's opinion. (Doc. 9, at 1, 5-15).

V. **The Mental RFC Contains No Reversable Error.**

    A. **Dr. Scott's Findings and the Mental RFC**

State agency psychological consultant Dr. Scott reviewed Plaintiff's claim in April 2023, and rendered an administrative medical finding that included the following mental RFC:

> [Plaintiff] is able to understand, recall, and perform simple and some detailed tasks while making occasional corresponding judgments. [Plaintiff] is able to attend to and complete more than basic tasks, including tasks that require some skills and judgment. [Plaintiff] is not able to consistently do complex work duties. More specifically, [Plaintiff] is unable to perform complex duties that involve in-depth multilayer decision-making or supervisory tasks, or perform tasks that require facts, figures, or abstract ideas at a high level of complexity, the health or safety of others, or fiduciary responsibilities.

> [Plaintiff] is able to concentrate and focus for two-hour periods with routine breaks, pace and persist for an eight-hour workday, and pace and persist over a 40-hour work week despite psychological symptoms. Due to periodic interference from psychological symptoms, [Plaintiff] will have difficulty maintaining concentration for complex tasks.

> [Plaintiff] can relate to supervision and coworkers on a superficial work basis.
>
> [Plaintiff] can effectively relate to the general public.
>
> [Plaintiff] can adapt to a work environment where work requirements are generally stable, but can change with some opportunity to adapt.

(AR, at 61).

> In formulating the RFC, the ALJ assessed Dr. Scott's findings as follows:
>
> Stephen Scott, Ph.D., found [Plaintiff] has moderate limitations in two of the four broad areas of mental function with a retained capacity to perform detailed but not complex tasks with reduced judgment, change, and social interactions. The findings are **persuasive**. Dr. Scott noted [Plaintiff's] allegations, treatment for anxiety and depression, and normal clinical findings, **which support** a significant retained ability but more than a non-severe impairment. His findings are **consistent** with the complete record, including [Plaintiff's] normal examination findings. While the findings are **persuasive**, the residual functional capacity finding does not include all the limitations described in the findings. For instance, Dr. Scott found [Plaintiff] had a mild limitation in adaptation and social interactions but limited his findings in both areas, which is **not internally consistent**. The complete record is **not consistent** with such limitations based on [Plaintiff's] mental impairments. Her ability to care for her grandchildren indicated she had the ability to handle change, use appropriate judgment, and interact with others.

(*Id*. at 23) (record citations omitted) (emphasis added). "After careful consideration of the entire record," (*id*. at 21), including Dr. Scott's opinion, the ALJ rendered a mental RFC that Plaintiff "was able to perform detailed and complex tasks. She was able to have occasional contact with the coworkers, supervisors, and the general public." (*Id*.)

### B.     Proper Consideration of Prior Administrative Medical Findings

An ALJ is required to evaluate every medical opinion and prior administrative medical finding of record. *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the

prior administrative medical findings in your case record."). "A prior administrative medical finding is a finding, other than the ultimate determination about whether [a claimant] is disabled, about a medical issue made by . . . Federal and State agency medical and psychological consultants at a prior level of review . . . in [the] current claim based on their review of the evidence in [the] case record." *Id.* § 404.1513(a)(5) (including the existence and severity of impairments and symptoms, statements about whether an impairment meets or medically equals a listing, the RFC, and how failure to follow prescribed treatment relates to the claim).

An ALJ considers medical opinions and prior administrative medical findings using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors. *Id.* § 404.1520c(a). "Supportability" examines how closely connected a medical opinion or prior administrative medical finding is to the medical source's objective medical evidence and supporting explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) is, the more persuasive the medical opinion(s) or prior administrative medical findings will be." *Id.* § 404.1520c(c)(1). "Consistency," on the other hand, compares a medical opinion or prior administrative medical finding to the other evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2). The ALJ must articulate how persuasive he finds a medical opinion or prior administrative medical finding. *Id.* § 404.1520c(b). In doing so, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2).[5] The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Here, the ALJ articulated the persuasiveness of Dr. Scott's opinion, and he specifically explained how he considered the supportability and consistency factors. (*See supra*, AR, at 23, *with reference to bold terms*). However, Plaintiff contends there was no substantial evidence to support the ALJ's RFC regarding (1) Plaintiff's ability to perform complex tasks and (2) adaptation and interaction limitations. (Doc. 7, at 8). We consider each in turn.

### C. The ALJ's Failure To Explain Why He Chose To Reject Probative Evidence As To Plaintiff's Ability to Perform Complex Tasks Was Harmless Error.

Plaintiff argues that "the ALJ's RFC conflicts with Dr. Scott's opinion in finding that [Plaintiff] could perform detailed and complex tasks without limitation. The ALJ indicated Dr. Scott's opinion was persuasive and identified no reasons for omitting these

---

[5] An ALJ must consider, but need not explicitly discuss, the remaining factors (relationship with the claimant, specialization, and other factors) unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. *See* 20 C.F.R. § 404.1520c(b)(2), (3).

9

limitations, and yet the mental RFC didn't include these limitations in the mental RFC." (Doc. 7, at 8).

As in initial matter, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("[E]xact correspondence between a medical opinion and the . . . RFC is not required."). However, an ALJ must discuss not only the evidence supporting her decision, but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

The ALJ did quote and deem persuasive Dr. Scott's finding that Plaintiff could not perform complex tasks. (AR, at 23). Indeed, Dr. Scott's full report contained several statements emphasizing this point:

> [Plaintiff] is not able to consistently do complex work duties. More specifically, [Plaintiff] is unable to perform complex duties that involve in-depth multilayer decision-making or supervisory tasks, or perform tasks that require facts, figures, or abstract ideas at a high level of complexity, the health or safety of others, or fiduciary responsibilities.
>
> . . . . Due to periodic interference from psychological symptoms, [Plaintiff] will have difficulty maintaining concentration for complex tasks.

(*Id*. at 61). But the ALJ's RFC states that Plaintiff <u>can</u> perform complex tasks. (*Id*. at 21). The ALJ provided no explanation for why he chose to include this in the RFC, in direct contradiction to Dr. Scott's "persuasive" findings, which were significantly probative as to

complex tasks. The failure to do so is error. However, because the ALJ limited Plaintiff to unskilled work, this error is ultimately harmless.

At Step Five, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy, such as inserting machine operator, garment sorter, and linking machine operator. (*Id*. at 25). These jobs all have a Specific Vocational Preparation ("SVP") of two and are considered unskilled work. (*Id*. at 25, 51). "'Unskilled work' is expressly defined as including, *inter alia*, work involving '[u]nderstanding, remembering, and carrying out simple instructions.' Thus, a limitation to unskilled work necessarily excludes jobs that involve complex or detailed instructions." *Baysinger v. Colvin*, 2016 WL 1170147, at *3 (D. Colo. Mar. 25, 2016) (quoting Social Security Ruling 96-9p, 1996 WL 374185 at *9 (SSA July 2, 1996); citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (finding that ALJ took Plaintiff's moderate difficulties in concentration, persistence, and pace into account by limiting Plaintiff to unskilled work with an SVP one or two)); *see also Allen v. Colvin*, No. CIV-15-773-HE, 2016 WL 3017377, at *5-6 (W.D. Okla. May 5, 2016), (finding that limiting Plaintiff to unskilled work of SVP one or two was not inconsistent with ALJ's RFC determination that Plaintiff could perform detailed tasks and instructions), *adopted*, 2016 WL 3017416 (W.D. Okla. May 24, 2016). Thus, including the ability to do complex tasks in the RFC was harmless error, since none of the ALJ's jobs required such an ability. *See Roth-Riemann v. Colvin*, No. CIV-12-1287-W, 2014 WL 199003, at *5 (W.D. Okla. Jan. 16, 2014) ("[I]f Plaintiff has a marked inability to remember and carry out detailed and complex judgments or decisions, the ALJ's error

11

[in finding that Plaintiff can perform such work] might be harmless because unskilled work does not require such an ability.").

### D. The RFC's Assessment of Plaintiff's Adaptation and Interaction Limitations Was Supported by Substantial Evidence.

Plaintiff contends that "the ALJ's rejection of the adaptation and interaction limitations from Dr. Scott's opinion was unsupported by substantial evidence." (Doc. 7, at 8). The undersigned disagrees.

The ALJ's RFC did not include any adaptation limitations. (AR, at 21). With regard to adaptation, Dr. Scott stated that Plaintiff "can adapt to a work environment where work requirements are generally stable, but can change with some opportunity to adapt." (*Id*. at 61). Also Dr. Scott assessed that Plaintiff had a "mild" limitation in adapting or managing oneself, (*id*. at 58), and then responded "no" to the question, "[d]oes the individual have adaptation limitations?" (*id*. at 61). Taken as a whole, Dr. Scott did not truly discredit or limit Plaintiff's ability to adapt although his narrative phrasing hints at a limitation. Thus, the ALJ's explanation that he found Dr. Scott's opinion on this point to be "not internally consistent," is reasonable, as was his expressly stated decision to not include all of Dr. Scott's limitations in the RFC. (*Id*. at 23). Moreover, the ALJ's finding that "[t]he complete record is not consistent with such [adaptation] limitations based on the [Plaintiff's] mental impairments," (*id*.), is supported by the ALJ's reference to Dr. Scott's notations that Plaintiff received effective treatment for anxiety and depression and had normal clinical findings. (*Id*.) (*citing id*. at 59, "Progress notes specifically state that clmt has been stable on meds for years. Although there are occasions when she is observed to

be anxious, she typically denies depression and anxiety, and MSEs are consistently normal.").

With regard to interaction, the ALJ's RFC stated Plaintiff "was able to have occasional contact with the coworkers, supervisors, and the general public." (*Id*. at 23). Dr. Scott's mental RFC stated that Plaintiff "can relate to supervision and coworkers on a superficial work basis" and "can effectively relate to the general public." (*Id*. at 61). However, Dr. Scott assessed that Plaintiff had a "mild" limitation in interacting with others, (*id*. at 58), and then responded "no" to the question "[d]oes the individual have social interaction limitations?" (*id*. at 61). First, the ALJ's RFC actually imposes more limitations on interacting with the general public – occasional contact only – than did Dr. Scott and thus does not prejudice Plaintiff. As for co-workers and supervisors, the ALJ's decision to limit Plaintiff to "occasional" contact as opposed to "superficial" contact[6] is again supported by the ALJ's accurate notation that Dr. Scott's findings were "not internally consistent" on social interactions and that the complete record was not consistent with Dr. Scott's limitations. (*Id*. at 23). Moreover, Plaintiff's effective treatment for her mental health issues – "stable on meds for years," (*id*. at 59) – and her normal clinical findings provide substantial evidence to support the ALJ's distinction on this point.

Furthermore, the ALJ indicated that he diverged from Dr. Scott's finding on adaptation and interaction on the basis that that Plaintiff's "ability to care for her

---

[6] *See Mabry-Schlicher v. Comm'r of Soc. Sec*., 2025 WL 1604376, at *4 (6th Cir. June 6, 2025) (suggesting that "'superficial' interaction is distinct from 'occasional' interaction because the latter refers to the quantity of interactions, while the former refers to the quality of interactions").

grandchildren indicated she had the ability to handle change, use appropriate judgment, and interact with others." (*Id*. at 23). Plaintiff contends this cannot be considered as substantial evidence to support the RFC because this information was contained in Plaintiff's September 2023 Function Report, when the grandchild was one and half years old – meaning her grandchild had not been born in September 2020, the time period relevant to her disability assessment. (Doc. 7, at 10). However, "[a] claim of disability may be supported by direct evidence or indirect evidence." *Thomas v. Berryhill*, No. 17-CV-212-STE, 2018 WL 652337, at *2 (W.D. Okla. Jan. 30, 2018). Evidence that "predate[s] or postdate[s] the insured period . . . may constitute indirect evidence of a claimant's condition during the insured period and, therefore, should also be considered." *Id*. (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (the ALJ should consider evidence from an earlier time period as it may be relevant to whether the claimant is disabled); *Baca v. Dep't of Health & Human Servs*., 5 F.3d 476, 479 (10th Cir. 1993) (evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of claimant's condition during the insured period)). This evidence, taken together with the ALJ's observation in the RFC analysis that Plaintiff "reported a high level of independence. She lived on her own other than two days per week when her husband lived there. She maintained her home. . . . She was functional outside of her home as well," (AR, at 21-22), was sufficient to support an RFC that was less restrictive than Dr. Scott's on adaptation and social interaction.

In conclusion, the ALJ's inclusion of complex tasks in the mental RFC was harmless error, and the remainder of the mental RFC was supported by substantial evidence. Thus, the ALJ committed no reversable error.

## VI.   Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the Court **AFFIRMS** the decision of the Commissioner.

**IT SO ORDERED** this 16th day of December, 2025.

_Amanda L. Maxfield_
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE